**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAS) PRODUCTS LIABILITY LITIGATION | MDL NO. 3094<br><br>THIS DOCUMENT RELATES TO ALL CASES<br><br>JUDGE KAREN SPENCER MARSTON |
| ASHTON FISHER,<br>　　*Plaintiff,*<br><br>v.<br><br>NOVO NORDISK A/S and NOVO NORDISK INC.,<br>　　*Defendants.* | COMPLAINT AND JURY DEMAND<br><br>CIVIL ACTION NO.: 2:25-cv-1105 |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

-------------------------------------------------------------------------------------------------------------------

Plaintiff files this Complaint pursuant to the Direct Filing Order and is to be bound by the rights, protections and privileges, and obligations of that Direct Filing Order and other Orders of the Court.  Further, in accordance with the Direct Filing Order, Plaintiff hereby designates the United States District Court for the Northern District of Texas as Plaintiff's designated venue ("Original Venue").  Plaintiff makes this selection based upon one (or more) of the following factors (check the appropriate box(es)):

X Plaintiff currently resides in Fort Worth, TX.

X Plaintiff purchased and used Defendant(s)' products in Fort Worth, TX.

__ The Original Venue is a judicial district in which Defendant _____ resides, and all Defendants are residents of the State in which the district is located (28 USC § 1391(b)(1)).

X The Original Venue is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, specifically (28 USC § 1391(b)(2)): Northern District of Texas.

There is no district in which an action may otherwise be brought under 28 USC § 1391, and the Original Venue is a judicial district in which Defendant _____ is subject to the Court's personal jurisdiction with respect to this action (28 USC § 1391(b)(3)).

__ Other reason (please explain): _____.

## NATURE OF THE CASE

1.      This is an action for damages suffered by Plaintiff, ASHTON FISHER, who was severely injured as a result of Plaintiff's use of Wegovy, an injectable prescription medication that is used to aid weight loss in adults and teens with obesity or excess weight and at least one weight-related comorbid condition.

2.      Wegovy is also known as semaglutide. Wegovy works by stimulating insulin production and reducing glucose production in the liver helping to lower blood sugar levels.

3.      Wegovy belongs to a class of drugs called GLP-1 receptor agonists ("GLP-1 RAs").

4.      Defendants acknowledge that gastrointestinal events are well known side effects of the GLP-1RA class of drugs.[1] However, Defendants have downplayed the severity of the gastrointestinal events caused by their GLP-1RAs, never, for example, warning of the risk of gastroparesis ("paralyzed stomach") and its sequalae.

5.      Gastroparesis is a condition that affects normal muscle movement in the stomach. Ordinarily, strong muscular contractions propel food through the digestive tract. However, in a person suffering from gastroparesis, the stomach's motility is slowed down or does not work at all, preventing the stomach from emptying properly. Gastroparesis can interfere with normal digestion and cause nausea, vomiting (including vomiting of undigested food), abdominal pain, abdominal bloating, severe dehydration, a feeling of fullness after eating just a few bites, undigested food hardening and remaining in the stomach, acid reflux, changes in blood sugar

---

[1] *See, e.g.*, CT Jones, *Ozempic Users Report Stomach Paralysis from Weight Loss Drug: 'So Much Hell'*, Rolling Stone (July 25, 2023), available at https://www.rollingstone.com/culture/culture-news/ozempic-stomach-paralysis-weight-loss-side-effects-1234794601 (visited on 9/26/23).

levels, lack of appetite, weight loss, malnutrition, and a decreased quality of life. There is no cure for gastroparesis.[2]

## PARTY PLAINTIFF

6.    Plaintiff, ASHTON FISHER, is a citizen of the United States, and is a resident of the State of Texas.

7.    Plaintiff is 26 years old.

8.    Plaintiff used Wegovy from approximately January 2023 to May 2023.

9.    Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Wegovy that was used by Plaintiff.

10.    As a result of using Wegovy, Plaintiff was caused to suffer from gastroparesis and its sequelae and, as a result, sustained severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses.

11.    As a result of using Wegovy, Plaintiff was caused to suffer from gastroparesis and its sequelae, which resulted in, for example, severe and persistent nausea, severe vomiting, and severe abdominal pain.

## PARTY DEFENDANTS

12.    Defendant Novo Nordisk Inc. is a Delaware corporation with a principal place of business at 800 Scudders Mill Road, Plainsboro, New Jersey.

13.    Defendant Novo Nordisk A/S is a public limited liability company organized under the laws of Denmark with a principal place of business in Bagsværd, Denmark.

---

[2] *Gastroparesis*, Mayo Clinic (June 11, 2022), available at https://www.mayoclinic.org/diseases-conditions/gastroparesis/symptoms-causes/syc-20355787 (visited on 9/26/23).

14.     Defendants Novo Nordisk A/S and Novo Nordisk Inc. are identified on Wegovy's label.[3]

15.     Defendants Novo Nordisk Inc. and Novo Nordisk A/S are referred to collectively herein as "Novo Nordisk."

16.     Novo Nordisk also designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed Wegovy.

## FACTUAL BACKGROUND

**A.     FDA's Approval of Wegovy**

17.     On December 4, 2020, the Novo Nordisk Defendants announced submission of a new drug application (NDA) to the FDA for regulatory approval of subcutaneous semaglutide 2.4 mg, a once-weekly glucagon-like peptide-1 (GLP-1) medication for chronic weight management. In the announcement, the Novo Nordisk Defendants represented that "once-weekly semaglutide 2.4 appeared to have a safe and well-tolerated profile" and "[t]he most common side effects were gastrointestinal and were transient, and mild or moderate in severity."[4]

18.     On December 4, 2020, Defendant Novo Nordisk Inc. submitted NDA 215256, requesting that the FDA grant it approval to market and sell Wegovy (semaglutide) injection in the United States as an adjunct to a reduced calorie diet and increased physical activity for chronic weight management in adults with an initial body mass index (BMI) of either $30/kg/m^2$ or greater

---

[3] Wegovy prescribing information, available at
https://www.accessdata.fda.gov/drugsatfda_docs/label/2023/215256s007lbl.pdf (last visited on 11/14/23).
[4] Novo Nordisk, *Novo Nordisk files for regulatory approval of once-weekly semaglutide 2.4 mg for weight management,* (Dec. 4, 2020), available at https://www.globenewswire.com/news-release/2020/12/04/2139776/0/en/Novo-Nordisk-files-for-US-FDA-regulatory-approval-of-once-weekly-semaglutide-2-4-mg-for-weight-management.html (last visited on 9/19/23).

(obese), or 27 kg/m² or greater (overweight) in the presence of at least one weight-related comorbid condition. On June 4, 2021, the FDA approved NDA 215256.[5]

19.    On June 29, 2022, Defendant Novo Nordisk Inc. submitted supplemental new drug application (sNDA) 215256/S-005 for Wegovy (semaglutide) injection, requesting approval for the addition of an indication for use in adolescents 12 years and older with an initial BMI at or above the 95th percentile for age and sex. On December 23, 2022, the FDA approved sNDA 215256/S-005.[6]

20.    On December 23, 2022, the Novo Nordisk Defendants announced the FDA's approval of sNDA 215256/S-005 for a new indication of Wegovy to treat obesity in teens aged 12 years and older. In the press release, the Novo Nordisk Defendants touted the "safety and efficacy of Wegovy as a treatment for adolescents with obesity[.]"[7] As with its prior press releases, the Novo Nordisk Defendants disclosed Important Safety Information and provided links to the Medication Guide and Prescribing Information, but gastroparesis was not identified as a side effect or risk.

21.    On September 23, 2022, Defendant Novo Nordisk Inc. submitted sNDA 215256/S-007, requesting approval for an update to the Prescribing Information and Medication Guide to include Wegovy (semaglutide) 1.7 mg subcutaneous weekly as an additional maintenance dose. On July 21, 2023, the FDA approved sNDA 215256/S-007.[8]

---

[5] FDA Approval Letter for NDA 215256 (Wegovy), available at
https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2021/215256Orig1s000ltr.pdf(last visited on 9/19/23).
[6] FDA Supplement Approval Letter for NDA 215256/S-005(Wegovy), available at
https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2022/215256Orig1s005ltr.pdf (last visited on 8/8/23).
[7] Novo Nordisk, *FDA approves once-weekly Wegovy injection for the treatment of obesity in teens aged 12 years and older* (Dec. 23, 2022), available at https://www.novonordisk-us.com/media/news-archive/news-details.html?id=151389 (last visited on 9/19/23).
[8] FDA Supplement Approval Letter for NDA 215256/S-007(Wegovy), available at
https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2023/215256Orig1s007ltr.pdf (last visited on 9/19/23).

**B.      Novo Nordisk's Marketing and Promotion of Wegovy**

22.      On June 4, 2021, the Novo Nordisk Defendants announced the FDA's approval of Wegovy (semaglutide) injection 2.4 mg in press releases stating that it is "the first-and-only prescription weight-loss medication with once-weekly dosing." Novo Nordisk described Wegovy as having "unprecedented efficacy"  and quoted its executive vice president of Development as saying that "'[t]he approval of Wegovy in the US brings great promise to people with obesity."[9]

23.      According to an article published in September 2021, the Novo Nordisk Defendants' launch of Wegovy in the U.S. was one of the fastest ever for the organization, with the sales team on the field with the drug just 72 hours after its FDA approval and the drug on the shelves days later. The head of North America operations and president of Novo Nordisk U.S. explained that the drug had sped quickly through the FDA approval process thanks to a priority review voucher and the company working under a condensed timeline.[10]

24.      On August 4, 2021, the Novo Nordisk Defendants announced that "the 2021 outlook for sales growth was expected to be 10-13% at CER (previously 6-10%), and operating profit growth was expected to be 9-12% at CER (previously 5-9%)" after reporting that "[i]n June 2021, Wegovy, semaglutide 2.4 mg, was made available to patients in the US following the approval from the US Food and Drug Administration (FDA) for weight management in adults living with obesity."[11]

---

[9] Novo Nordisk, *Wegovy (semaglutide 2.4 mg), the first and only once-weekly GLP-1 therapy for weight management, approved in the US* (June 4, 2021), available at https://www.novonordisk.com/news-and-media/news-and-ir-materials/news-details.html?id=62112 (last visited on 9/19/23).
[10] Upton, Julian, *Rethinking Obesity: Wegovy*, Pharmaceutical Executive - 09-01-2021, Volume 41, Issue 9 (published on September 14, 2021), available at https://www.pharmexec.com/view/wegovy (last visited on 9/19/23).
[11] Novo Nordisk, *Novo Nordisk's net profit increased by 10% in the first six months of 2021* (August 4, 2021), available at https://www.novonordisk.com/news-and-media/news-and-ir-materials/news-details.html?id=71008 (last visited on 9/19/23).

25.    Novo Nordisk promoted the safety and sale of Wegovy in the United States on its websites, in press releases, through in-person presentations, through the drug's label, in print materials, on social media, and through other public outlets.

26.    In November 2021, it was reported that the Novo Nordisk Defendants had launched an obesity awareness campaign called "It's Bigger Than Me" ahead of its planned Direct to Consumer ads for the recently approved Wegovy. Novo Nordisk Defendants worked with actress Queen Latifah to create a series of videos, which appeared on YouTube, Instagram, and a dedicated website, in order to change minds about obesity. One article described the video series as "Novo Nordisk tak[ing] a page from three popular TV genres—medical drama, '90s sitcom and procedural crime show—" in order to steer the narrative about obesity "away from 'blame, shame, bias, and stigma' and toward empathy and understanding[.]"[12]

27.    In October 2021, the Novo Nordisk Defendants rolled out a physician education site Rethink Obesity, to persuade doctors to discuss obesity treatment with patients.[13]

28.    In the weeks leading up to the drug's release to pharmacies, the Novo Nordisk Defendants also hosted doctor events to spread the word about Wegovy.[14]

29.    On February 2, 2022, Novo Nordisk announced its 2021 financial report, in which it reported that its North America operations had increased obesity care sales by 83% at constant

---

[12] Natalie Missakian, *Novo Nordisk casts Queen Latifah in TV-themed awareness campaign for obesity*, Fierce Pharma (Nov. 1, 2021) available at https://www.fiercepharma.com/marketing/queen-latifah-tackles-obesity-tv-inspired-awareness-campaign-for-novo-nordisk (last visited on 9/19/23).
[13] Natalie Missakian, *Novo Nordisk casts Queen Latifah in TV-themed awareness campaign for obesity*, Fierce Pharma (Nov. 1, 2021) available at https://www.fiercepharma.com/marketing/queen-latifah-tackles-obesity-tv-inspired-awareness-campaign-for-novo-nordisk (last visited on 9/19/23).
[14] Fraiser Kansteiner*, Novo Nordisk, armed with Wegovy green light, preps aggressive push to build obesity market*, Fierce Phama (June 8, 2021) available at https://www.fiercepharma.com/pharma/novo-nordisk-armed-wegovy-green-light-obesity-preps-one-fastest-launches-ever-execs (last visited on 9/19/23).

exchange rates (CER), reflecting the launch of Wegovy in June 2021.[15] An article reporting on the announcement stated that in 2021, Novo Nordisk earned approximately $1.2 billion from sales of Wegovy and its earlier weight loss treatment Saxenda and that Novo Nordisk aimed to increase obesity drug sales to more than $3.7 billion.[16]

30.    Since 2018, Novo Nordisk has spent more than $884,000,000 on television ads in the United States to promote its semaglutide drugs (Ozempic, Wegovy and Rybelsus).[17]

31.    On July 5, 2023, it was reported that the Novo Nordisk Defendants had spent $11,000,000 on food and travel for doctors as part of their efforts to promote their GLP-1 medications, including Wegovy. In 2022 alone, the Novo Nordisk Defendants bought more than 457,000 meals to educate doctors and other prescribers about its GLP-1s, with nearly 12,000 doctors receiving more than 50 meals and snacks from Defendants. In 2022, the Novo Nordisk Defendants also spent $2 million flying doctors to London, Paris, Orlando, and Honolulu related to its GLP-1s.[18]

32.    On July 21, 2023, it was reported that Novo Nordisk had purchased more than 457,000 meals—at a total price of more than $9 million—to educate prescribers about Wegovy and its other GLP-1s. The president and CEO of the Alliance of Community, who was interviewed for the article, described the expenditures as "outrageous" and suggested that the millions Novo Nordisk spent marketing its drugs to prescribers would be better used furthering research about

---

[15] Novo Nordisk, Company Announcement, *Financial report for the period 1 January 2021 to 31 December 2021* (Feb. 2, 2022), available at https://www.novonordisk.com/content/dam/nncorp/global/en/investors/pdfs/financial-results/2021/Q4-2021-company-announcement.pdf, at 12 (last visited on 9/19/2023).
[16] Nate Pagliarulo, *Novo sees fast growth ahead of obesity drugs despite production hurdles*, BioPharmaDive (Mar. 4, 2022) available at https://www.biopharmadive.com/news/novo-wegovy-obesity-sales-demand-outlook/619834/ (last visited on 9/19/23).
[17] Ritzau, *Novo Nordisk runs TV ads in US for multimillion-dollar sum*, MedWatch (April 26, 2023), available at https://medwatch.com/News/Pharma___Biotech/article15680727.ece (visited on 9/26/23).
[18] Florko, N, *Novo Nordisk bought prescribers over 450,000 meals and snacks to promote drugs like Ozempic*, National Center for Health Research (July 5, 2023), available at https://www.center4research.org/novo-nordisk-gave-doctors-450000-meals-ozempic (last visited on 9/20/23).

their potential side effects and long-term effectiveness. The author pointed out that research published in spring 2023 "suggested that GLP-1s could put patients at an elevated risk of a potentially fatal gastrointestinal condition that requires surgery."[19]

33.    In an article published on July 21, 2023, the President and CEO of the Alliance of Community Health Plans described Novo Nordisk's spending on meals for doctors as "outrageous" and suggested that the millions Novo Nordisk spent marketing its drugs to prescribers would be better used furthering research about potential side effects and long-term effectiveness. The author cited research published in the spring of 2023 showing an increased risk of intestinal obstruction as a result of using GLP-1RA drugs.[20]

34.    As a result of the Novo Nordisk Defendants' advertising and promotion efforts, Wegovy has been widely used throughout the United States. The number of prescriptions filled reached over 100,000 per week in May 2023, with more than 30,000 of those being new prescriptions.[21]

35.    On TikTok, the hashtag #Wegovy currently has over 555 million views, and the hashtag #wegovyweightloss currently has over 165 million views.[22]

---

[19] Erin Prater, *Ozempic manufacturer Novo Nordisk spent $11 million last year 'wining and dining' doctors. Experts slam the move as a breach of doctor-patient trust,* Fortune Well (July 21, 2023), available at https://fortune.com/well/2023/07/21/ozempic-novo-nordisk-meals-travel-prescribing-doctors/ (last visited on 9/19/23).

[20] Erin Prater, *Ozempic manufacturer Novo Nordisk spent $11 million last year 'wining and dining' doctors. Experts slam the move as a breach of doctor-patient trust,* Fortune Well (July 21, 2023), available at https://fortune.com/well/2023/07/21/ozempic-novo-nordisk-meals-travel-prescribing-doctors/ (visited on 9/26/23); *see also* Erin Prater, *Weight-loss drugs like Ozempic and Wegovy may put certain people at risk of serious complications, researchers warn*, Fortune Well (March 7, 2023), available at https://fortune.com/well/2023/03/07/ozempic-wegovy-elevated-risk-intestinal-obstruction-later-type-2-diabetes-weight-loss-drug/ (visited on 10/18/23).

[21] Skydsgaard & Fick, *Novo Nordisk: U.S. is priority for weight-loss drug over new markets*, Reuters (May 4, 2023), available at https://www.reuters.com/business/healthcare-pharmaceuticals/novo-nordisk-us-is-priority-weight-loss-drug-over-launching-new-markets-2023-05-04/ (last visited on 9/19/23).

[22] https://www.tiktok.com/tag/wegovy (last visited on 9/22/23); https://www.tiktok.com/tag/wegovyweightloss (last visited on 9/22/23).

36.    On June 15, 2023, NBC News published a report about the "thousands of weight-loss ads on social media for the drugs Ozempic and Wegovy." While many of those ads were found to be from online pharmacies, medical spas, and diet clinics, as of June of 2023, Novo Nordisk was still running online social-media ads for its semaglutide products, despite claiming in May that it would stop running ads due to a shortage of the drug.[23]

37.    On May 5, 2023, it was reported that Novo Nordisk would limit distribution of its low-dose versions of Wegovy to ensure that people already taking the drug would have enough supply amidst shortages of the drug caused by a boom in sales due to celebrity endorsements. The company announced that it was serving hundreds of thousands of U.S. patients with Wegovy but trends indicated that demand for Wegovy in the U.S. would exceed current supply capacity.[24]

38.    On June 20, 2023, it was reported that Wegovy was on track for sales of over $4 billion this year in the U.S. alone, despite the Novo Nordisk Defendants' struggle to keep up with demand for the drug. One analyst described the prescription growth trend for the GLP-1 class of drugs as 80 percent in diabetes and 313 percent in obesity and said that the market opportunity for Novo Nordisk and its main competitor could be $40 billion.[25]

39.    On August 10, 2023, an investment site reported that Novo Nordisk had raised its outlook as revenue from Wegovy skyrocketed 537% to $1.1 billion in the second quarter. Total

---

[23] Ingram D, *More than 4,000 ads for Ozempic-style drugs found running on Instagram and Facebook*, NBC News (June 15, 2023), available at https://www.nbcnews.com/tech/internet/ozempic-weight-loss-drug-ads-instagram-wegovy-semaglutide-rcna88602 (visited on 9/26/23).

[24] Cara Murez, *Maker of Wegovy Limits Supply of Obesity Drug in U.S.*, U.S. News & World Report (May 5, 2023) available at https://www.usnews.com/news/health-news/articles/2023-05-05/maker-of-wegovy-limits-supply-of-obesity-drug-in-u-s (last visited on 9/19/23).

[25] Goldstein, Steve, *Hit Wegovy weight-loss drug on track for $4 billion in U.S. sales despite supply,* MarketWatch (June 20, 2023), available at https://www.marketwatch.com/story/hit-wegovy-weight-loss-drug-on-track-for-4-billion-in-u-s-sales-despite-supply-constraints-analyst-says-b8672974 (last visited on 9/19/23).

sales were up 32% to $8 billion, with a profit of $2.9 billion, even though Novo Nordisk had cut its supply of starter doses starting in May 2023.[26]

40.    At all relevant times, Novo Nordisk was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and/or distribute Wegovy.

## C.    The Medical Literature and Clinical Trials Gave Defendants Notice of Gastroparesis Being Causally Associated with GLP-1RAs.

41.    As previously noted, Wegovy (semaglutide) belongs to a class of drugs called GLP-1 receptor agonists ("GLP-1RAs").

42.    Medications within the GLP-1RA class of drugs mimic the activities of physiologic GLP-1, which is a gut hormone that activates the GLP-1 receptor in the pancreas to stimulate the release of insulin and suppress glucagon.[27]

43.    Because the risk of gastroparesis is common to the entire class of drugs, any published literature regarding the association between gastroparesis and *any* GLP-1RA (such as tirzepatide, exenatide, liraglutide, albiglutide, dulaglutide, lixisenatide, and semaglutide) should have put Defendants on notice of the need to warn patients and prescribing physicians of the risk of gastroparesis associated with these drugs.

44.    In addition to pancreatic effects, the published medical literature shows that GLP-1 slows gastric emptying. As early as 2010, a study published in The Journal of Clinical Endocrinology & Metabolism indicated this effect.[28]

---

[26] McColl, Bill, *Novo Nordisk Boosts Guidance as Sales of Weight-Loss Drug Wegovy Soar*, Investopedia (Aug. 10, 2023), available at https://www.investopedia.com/novo-nordisk-boosts-guidance-as-sales-of-weight-loss-drug-wegovy-soar-7629281 (last visited on 9/19/23).
[27] Hinnen D, *Glucagon-Like Peptide 1 Receptor Agonists for Type 2 Diabetes*, 30(3) Diabetes Spectr., 202–210 (August 2017), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5556578/ (visited on 9/26/23).
[28] Deane AM et al., *Endogenous Glucagon-Like Peptide-1 Slows Gastric Emptying in Healthy Subjects, Attenuating Postprandial Glycemia*, 95(1) J Clinical Endo Metabolism, 225-221 (January 1, 2010), available at https://academic.oup.com/jcem/article/95/1/215/2835243 (visited on 9/26/23); American Society of Anesthesiologists, *Patients Taking Popular Medications for Diabetes and Weight Loss Should Stop Before Elective*

45.    Defendants knew or should have known of this risk of gastroparesis from the clinical trials, medical literature, and case reports.

46.    A 2016 trial funded by Novo Nordisk measuring semaglutide and cardiovascular outcomes in patients with type 2 diabetes found more gastrointestinal disorders in the semaglutide group than in the placebo group, including a severe adverse event report of impaired gastric emptying with semaglutide 0.5 mg together with other serious gastrointestinal adverse events such as abdominal pain (upper and lower), intestinal obstruction, change of bowel habits, vomiting, and diarrhea.[29]

47.    Two subjects in a semaglutide trial pool by Novo Nordisk reported moderate adverse events of impaired gastric emptying and both subjects permanently discontinued treatment due to the adverse events. Three subjects also reported mild adverse events of impaired gastric emptying in the semaglutide run-in period of trial 4376. The cardiovascular outcomes trials included two cases of gastroparesis with the first subject being diagnosed with severe gastroparesis after one month in the trial and second subject being diagnosed with gastroparesis after approximately two months in the trial.

48.    A study published in 2017 evaluated the effect of GLP-1RAs on gastrointestinal tract motility and residue rates and explained that "GLP-1 suppresses gastric emptying by inhibiting peristalsis of the stomach while increasing tonic contraction of the pyloric region." The

---

*Surgery, ASA Suggests* (June 29, 2023), available at https://www.asahq.org/about-asa/newsroom/news-releases/2023/06/patients-taking-popular-medications-for-diabetes-and-weight-loss-should-stop-before-elective-surgery (visited on 9/26/23).

[29] Marso, SP, et al., Semaglutide and Cardiovascular Outcomes in Patients with Type 2 Diabetes, N. Eng. J. Med. 375:1834-1844 (November 2016), available at https://www.nejm.org/doi/10.1056/NEJMoa1607141 (visited on 10/19/23).

study authors concluded that the GLP-1RA drug liraglutide "exhibited gastric-emptying delaying effects" and "the drug also inhibited duodenal and small bowel movements at the same time."[30]

49.    Another study in 2017 reviewed the survey results from 10,987 patients and 851 physicians and found that "GI-related issues were the top two patient-reported reasons for GLP-1RA discontinuation in the past 6 months, with 'Made me feel sick' as the most frequently reported reason (64.4%), followed by 'Made me throw up' (45.4%)."[31] As explained above, these are symptoms of gastroparesis.

50.    A 2019 study of the GLP-1RA drug dulaglutide identified adverse events for impaired gastric emptying and diabetic gastroparesis.

51.    In August of 2020, medical literature advised that some "patients do not know they have diabetic gastroparesis until they are put on a glucagon-like peptide 1 (GLP-1) receptor agonist such as ... semaglutide ... to manage their blood glucose." The article went on to explain that "[t]his class of drugs can exacerbate the symptoms of diabetic gastroparesis. ... Thus, GLP-1 receptor agonist therapy is not recommended for people who experience symptoms of gastroparesis."[32]

52.    In a September 2020 article funded and reviewed by Novo Nordisk, scientists affiliated with Novo Nordisk reported on two global clinical trials that evaluated the effect of semaglutide in patients with cardiovascular events and diabetes. More patients permanently discontinued taking oral semaglutide (11.6%) than placebo (6.5%) due to adverse events. The most common adverse events associated with semaglutide were nausea (2.9% with semaglutide versus

---

[30] Nakatani Y et al., *Effect of GLP-1 receptor agonist on gastrointestinal tract motility and residue rates as evaluated by capsule endoscopy*, 43(5) Diabetes & Metabolism, 430-37 (October 2017), available at https://www.sciencedirect.com/science/article/pii/S1262363617301076 (visited on 9/26/23).
[31] Sikirica M et al., *Reasons for discontinuation of GLP1 receptor agonists: data from a real-world cross-sectional survey of physicians and their patients with type 2 diabetes*, 10 Diabetes Metab. Syndr. Obes., 403-412 (September 2017), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5630073/
[32] Young CF, Moussa M, Shubrook JH, *Diabetic Gastroparesis: A Review*, Diabetes Spectr. (2020), Aug; 33(3): 290–297, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7428659/ (visited on 9/26/23).

0.5% with placebo), vomiting (1.5% with semaglutide versus 0.3% with placebo), and diarrhea (1.4% with semaglutide versus 0.4% with placebo). Injectable semaglutide had a discontinuation rate of 11.5-14.5% (versus 5.7-7.6% with placebo) over a two-year period. The authors acknowledged the potential for severe gastrointestinal events, warning that "[f]or patients reporting severe adverse gastrointestinal reactions, it is advised to monitor renal function when initiating or escalating doses of oral semaglutide." For patients with other comorbidities, the study warned that "patients should be made aware of the occurrence of gastrointestinal adverse events with GLP-1RAs." The study further identified as one "key clinical take-home point" that "patients should be made aware of the occurrence of gastrointestinal adverse events with GLP-1RAs."[33]

53.    A July 2021 article funded and reviewed by Novo Nordisk considered 23 randomized control trials conducted across the United States, Japan, and China and concluded that "gastrointestinal disturbances" were "well-known" side effects associated with semaglutide use. When compared with placebos, the subcutaneous (injection) form of the drug induced nausea in up to 20% of patients (versus up to 8% on the placebo group), vomiting in up to 11.5% of patients (versus up to 3% in the placebo group) and diarrhea in up to 11.3% of patients (versus up to 6% in the placebo group). Overall, the percentage of patients experiencing adverse events that led to trial product discontinuation was greatest for gastrointestinal related adverse events, with some trials experiencing 100% discontinuation due to gastrointestinal related adverse events. The mean value of gastrointestinal related adverse events that led to discontinuation averaged 57.75%. The study

---

[33] Mosenzon O, Miller EM, & Warren ML, *Oral semaglutide in patients with type 2 diabetes and cardiovascular disease, renal impairment, or other comorbidities, and in older patients*, Postgraduate Medicine (2020), 132:sup2, 37-47, available at https://doi.org/10.1080/00325481.2020.1800286 (visited on 9/26/23).

acknowledges that while nausea and vomiting are unwanted side effects, "they may be partly responsible for aspects of the drug's efficacy[.]"[34]

54.     An October 2021 article in the Journal of Investigative Medicine ("JIM") concluded that because gastroparesis can be associated with several medications, "[i]t is crucial to identify the causative drugs as discontinuation of the drug can result in resolution of the symptoms[.]" In diabetics, making this determination can be particularly "tricky" because both diabetes and GLP-1RAs can cause delayed gastric emptying. As such, "the timeline of drug initiation and symptom onset becomes of the upmost importance." The authors reviewed two case reports (discussed below) and concluded that history taking and making an accurate diagnosis of diabetic gastroparesis versus medication-induced gastroparesis is critical.[35]

55.     Case Report #1 in JIM involved a 52-year-old female with long-standing (10 years) well-controlled, type 2 diabetes who had been taking weekly semaglutide injections approximately one month prior to the onset of gastroparesis symptoms. The patient was referred with a 7-month history of post-prandial epigastric pain, accompanied by fullness, bloating, and nausea. A gastric emptying study showed a 24% retention of isotope in the patient's stomach at four hours, indicative of delayed gastric emptying. The patient discontinued semaglutide and her symptoms resolved after six weeks. The case report authors concluded that "thorough history taking revealed the cause [of gastroparesis] to be medication induced."[36]

---

[34] Smits MM & Van Raalte DH (2021), *Safety of Semaglutide*, Front. Endocrinol., 07 July 2021, doi: 10.3389/fendo.2021.645563, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8294388/ (visited on 9/26/23).
[35] Kalas MA, Galura GM, McCallum RW, *Medication-Induced Gastroparesis: A Case Report*, J Investig Med High Impact Case Rep. 2021 Jan-Dec; 9: 23247096211051919, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8529310/ (visited on 9/26/23).
[36] Kalas MA, Galura GM, McCallum RW, *Medication-Induced Gastroparesis: A Case Report*, J Investig Med High Impact Case Rep. 2021 Jan-Dec; 9: 23247096211051919, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8529310/ (visited on 9/26/23).

56.     Case Report #2 in JIM involved a 57-year-old female with a long-standing (16 years) type 2 diabetes who had been taking weekly dulaglutide injections (another GLP-1RA) for 15 months and suffering from abdominal bloating, nausea, and vomiting for 12 of those months. A gastric emptying study showed 35% retention of isotope in the patient's stomach at four hours, indicating delayed gastric emptying. After discontinuing dulaglutide, the patient experienced a gradual resolution of symptoms over a four-week period.[37]

57.     A June 2022 study reported GLP-1RA Mounjaro (tirzepatide) adverse events of vomiting, nausea, and "severe or serious gastrointestinal events."[38]

58.     An October 2022 study analyzed 5,442 GLP-1RA adverse gastrointestinal events. 32% were serious, including 40 deaths, 53 life-threatening conditions, and 772 hospitalizations. The primary events were nausea and vomiting. There were also adverse events for impaired gastric emptying.[39]

59.     A January 2023 meta-analysis of GLP-1RA (Mounjaro) adverse events reported high rates of nausea and vomiting.[40]

60.     In February 2023, a longitudinal study of GLP-1RA (dulaglutide) reported adverse events for nausea and vomiting, and one adverse event of impaired gastric emptying.[41]

---

[37] Kalas MA, Galura GM, McCallum RW, *Medication-Induced Gastroparesis: A Case Report*, J Investig Med High Impact Case Rep. 2021 Jan-Dec; 9: 23247096211051919, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8529310/ (visited on 9/26/23).
[38] Jastreboff, *Tirzepatide Once Weekly for the Treatment of Obesity*, N Engl J Med, at 214 (June 4, 2022) (https://doi.org/10.1056/nejmoa2206038).
[39] Shu, *Gastrointestinal adverse events associated with semaglutide: A pharmacovigilance study based on FDA adverse event reporting system*, Front. Public Health (Oct. 20, 2022). (https://doi.org/10.3389%2Ffpubh.2022.996179).
[40] Mirsha, *Adverse Events Related to Tirzepatide*, J. of Endocrine Society (Jan. 26, 2023) (https://doi.org/10.1210%2Fjendso%2Fbvad016).
[41] Chin, *Safety and effectiveness of dulaglutide 0.75 mg in Japanese patients with type 2 diabetes in real-world clinical practice: 36 month postmarketing observational study*, J Diabetes Investig (Feb. 2023) (https://doi.org/10.1111%2Fjdi.13932).

61.    On March 28, 2023, a case study concluded that impaired gastric emptying is "a significant safety concern, especially since it is consistent with the known mechanism of action of the drug."[42]

62.    On June 29, 2023, the American Society of Anesthesiologists ("ASA") warned that patients taking semaglutide and other GLP-1RAs should stop the medication at least a week before elective surgery because these medications "delay gastric (stomach) emptying" and "the delay in stomach emptying could be associated with an increased risk of regurgitation and aspiration of food into the airways and lungs during general anesthesia and deep sedation." The ASA also warned that the risk is higher where patients on these medications have experienced nausea and vomiting.[43]

63.    News sources have identified the potential for serious side effects in users of Ozempic, including gastroparesis, leading to hospitalization.[44] For example, NBC News reported in January 2023 that some Ozempic users were discontinuing use because their symptoms were unbearable, and one user said that five weeks into taking the medication she found herself unable to move off the bathroom floor because she had "vomited so much that [she] didn't have the energy

---

[42] Klein, Semaglutide, delayed gastric emptying, and intraoperative pulmonary aspiration: a case report, Can J. Anesth (Mar. 28, 2023) (https://doi.org/10.1007/s12630-023-02440-3).

[43] American Society of Anesthesiologists, *Patients Taking Popular Medications for Diabetes and Weight Loss Should Stop Before Elective Surgery, ASA Suggests* (June 29, 2023), available at https://www.asahq.org/about-asa/newsroom/news-releases/2023/06/patients-taking-popular-medications-for-diabetes-and-weight-loss-should-stop-before-elective-surgery (visited on 9/26/23).

[44] Penny Min, *Ozempic May Cause Potential Hospitalizations*, healthnews (June 26, 2023), available at https://healthnews.com/news/ozempic-may-cause-potential-hospitalizations/ (visited on 9/26/23); Elizabeth Laura Nelson, *These Are the 5 Most Common Ozempic Side Effects, According to Doctors*, Best Life (April 3, 2023), available at https://bestlifeonline.com/ozempic-side-effects-news/ (visited on 9/26/23); Cara Shultz, *Ozempic and Wegovy May Cause Stomach Paralysis in Some Patients*, People (July 26, 2023), available at https://people.com/ozempic-wegovy-weight-loss-stomach-paralysis-7565833 (visited on 9/26/23); CBS News Philadelphia, *Popular weight loss drugs Ozempic and Wegovy may cause stomach paralysis, doctors warn* (July 23, 2023), available at https://www.cbsnews.com/philadelphia/news/weight-loss-drugs-wegovy-ozempic-stomach-paralysis/ (visited on 9/26/23).

to get up."[45] CNN reported in July that one Ozempic user diagnosed with gastroparesis vomits so frequently that she had to take a leave of absence from her teaching job.[46]

64.     A July 25, 2023, article in Rolling Stone magazine—"*Ozempic Users Report Stomach Paralysis from Weight Loss Drug: 'So Much Hell'*"—highlighted three patients who have suffered severe gastrointestinal related events, including gastroparesis, as a result of their use of GLP-1RAs. Patient 1 (female, age 37) reported incidents of vomiting multiple times per day and being unable to eat. The patient's physician diagnosed her with severe gastroparesis and concluded that her problems were caused and/or exacerbated by her use of a GLP-1RA medication. Patient 2 (female) used Ozempic for one year and reported incidents of vomiting, including multiple times per day. The patient's physician diagnosed her with severe gastroparesis related to her Ozempic use. Patient 3 (female, age 42) experienced severe nausea both during and after she discontinued use of a GLP-1RA. In a statement to Rolling Stone, Novo Nordisk acknowledged that "[t]he most common adverse reactions, as with all GLP-1 RAs, are gastrointestinal related." Novo Nordisk further stated that while "GLP-1 RAs are known to cause a delay in gastric emptying, … [s]ymptoms of delayed gastric emptying, nausea and vomiting are listed as side effects." Novo Nordisk did not claim to have warned consumers about gastroparesis, or other severe gastrointestinal issues.[47]

65.     On July 25, 2023, CNN Health reported that patients taking Ozempic have been diagnosed "with severe gastroparesis, or stomach paralysis, which their doctors think may have

---

[45] Bendix A, Lovelace B Jr., *What it's like to take the blockbuster drugs Ozempic and Wegovy, from severe side effects to losing 50 pounds*, NBC News (Jan. 29, 2023), available at https://www.nbcnews.com/health/health-news/ozempic-wegovy-diabetes-weight-loss-side-effects-rcna66493 (visited on 9/26/23).

[46] Brenda Goodman, *They took blockbuster drugs for weight loss and diabetes. Now their stomachs are paralyzed*, CNN (July 25, 2023), available at https://www.cnn.com/2023/07/25/health/weight-loss-diabetes-drugs-gastroparesis/index.html (visited on 9/26/23).

[47] CT Jones, *Ozempic Users Report Stomach Paralysis from Weight Loss Drug: 'So Much Hell'*, Rolling Stone (July 25, 2023), available at https://www.rollingstone.com/culture/culture-news/ozempic-stomach-paralysis-weight-loss-side-effects-1234794601 (visited on 9/26/23).

resulted from or been exacerbated by the medication they were taking, Ozempic." Another patient taking Wegovy suffered ongoing nausea and vomiting, which was not diagnosed, but which needed to be managed with Zofran and prescription probiotics.[48]

66.    On July 26, 2023, a New York hospital published an article to its online health blog section "What You Need to Know About Gastroparesis" entitled "Delayed Stomach Emptying Can Be Result of Diabetes or New Weight-Loss Medicines." It was reported that a growing number of gastroparesis cases had been seen in people taking GLP-1RAs. The article noted that the weight-loss drugs can delay or decrease the contraction of muscles that mix and propel contents in the gastrointestinal tract leading to delayed gastric emptying. One concern raised was that patients and doctors often assume the symptoms of gastroparesis are reflux or other gastrointestinal conditions, meaning it may take a long time for someone to be diagnosed correctly.[49]

67.    In an October 5, 2023, Research Letter published in the Journal of the American Medical Association ("JAMA"), the authors examined gastrointestinal adverse events associated with GLP-1RAs used for weight loss in clinical setting and reported that use of GLP-1RAs compared with use of bupropion-naltrexone was associated with increased risk of pancreatitis, gastroparesis, and bowel obstruction.[50] The study found that patients prescribed GLP-1RAs were at 4.22 times higher risk of intestinal obstruction and at 3.67 times higher risk of gastroparesis.

---

[48] Brenca Goodman, *They took blockbuster drugs for weight loss and diabetes. Now their stomachs are paralyzed,* CNN Health (July 25, 2023), available at https://www.cnn.com/2023/07/25/health/weight-loss-diabetes-drugs-gastroparesis (last visited on 9/26/23).

[49] *Delayed Stomach Emptying Can Be Result of Diabetes or New Weight-Loss Medicines*, Montefiore Health Blog article (released July 26, 2023), available at https://www.montefiorenyack.org/health-blog/what-you-need-know-about-gastroparesis (last visited on 9/26/2023).

[50] Mohit Sodhi, et al., *Risk of Gastrointestinal Adverse Events Associated with Glucagon-Like Peptide-1 Receptor Agonists for Weight Loss*, JAMA (published online October 5, 2023), available at https://jamanetwork.com/journals/jama/fullarticle/2810542 (last visited 10/19/23).

68.     The medical literature listed above is not a comprehensive list, and several other case reports have indicated that GLP-1RAs can cause gastroparesis and impaired gastric emptying.[51]

69.     Defendants knew or should have known of the causal association between the use of GLP-1RAs and the risk of developing gastroparesis and its sequelae, but they ignored the causal association. Defendants' actual and constructive knowledge derived from their clinical studies, case reports, medical literature, including the medical literature and case reports referenced above in this Complaint.

70.     On information and belief, Defendants not only knew or should have known that their GLP-1RAs cause delayed gastric emptying, resulting in risks of gastroparesis, but they may have sought out the delayed gastric emptying effect due to its association with weight loss. For example, a recent study published in 2023 notes that "it has been previously proposed that long-acting GLP-1RAs could hypothetically contribute to reduced energy intake and weight loss by delaying GE [gastric emptying,]" and the study authors suggested "further exploration of peripheral mechanisms through which s.c. semaglutide, particularly at a dose of 2.4. mg/week, could potentially contribute to reduced food and energy intake."[52]

---

[51] Cure, *Exenatide and Rare Adverse Events*, N. Eng. J. Med. (May 1, 2008) (https://doi.org/10.1056/nejmc0707137); Rai, *Liraglutide-induced Acute Gastroparesis*, Cureus (Dec. 28, 2018) (https://doi.org/10.7759%2Fcureus.3791); Guo, *A Post Hoc Pooled Analysis of Two Randomized Trials*, Diabetes Ther (2020) (https://doi.org/10.1007%2Fs13300-020-00869-z); Almustanyir, *Gastroparesis With the Initiation of Liraglutide: A Case Report*, Cureus (Nov. 28, 2020) (https://doi.org/10.7759/cureus.11735); Ishihara, *Suspected Gastroparesis With Concurrent Gastroesophageal Reflux Disease Induced by Low-Dose Liraglutide*, Cureus (Jul. 16, 2022) (https://doi.org/10.7759/cureus.26916); Preda, *Gastroparesis with bezoar formation in patients treated with glucagon-like peptide-1 receptor agonists: potential relevance for bariatric and other gastric surgery*, BJS Open (Feb. 2023) (https://doi.org/10.1093%2Fbjsopen%2Fzrac169).

[52] Jensterle M et al., *Semaglutide delays 4-hour gastric emptying in women with polycystic ovary syndrome and obesity*, 25(4) Diabetes Obes. Metab. 975-984 (April 2023), available at https://dom-pubs.onlinelibrary.wiley.com/doi/epdf/10.1111/dom.14944 (visited on 9/26/23).

**D.      Defendants Failed to Warn of the Risk of Gastroparesis from Wegovy**

71.      The Prescribing Information for Wegovy discloses warnings, precautions, and adverse reactions causally associated with Wegovy, but it does not disclose the risk of gastroparesis. Instead of properly disclosing gastrointestinal risks, it discloses delayed gastric emptying under the "Drug Interactions" heading and notes that Wegovy "[m]ay impact absorption of concomitantly administered oral medications." The Prescribing Information does not disclose gastroparesis as a ***risk*** of taking Wegovy, nor does it disclose gastroparesis as a side effect or condition that can result as a consequence of taking Wegovy.[53]

72.      The Wegovy label lists nausea, vomiting, diarrhea, abdominal pain, and constipation as common adverse reactions reported in Wegovy patients but does not include vomiting in its "Warnings and Precautions" section, and it does not indicate a severity of risk.[54] Gastroparesis is not mentioned at all. In its section on "Females and Males of Reproductive Potential," the Wegovy label advises female users to discontinue Wegovy at least 2 months before a planned pregnancy due to the long half-life of semaglutide. This demonstrates that the Novo Nordisk Defendants knew or should have known that symptoms, such as continuous and violent vomiting, can linger long after the drugs are discontinued and shows the need to warn of gastroparesis.

73.      Similarly, the Novo Nordisk Defendants' main promotional website for Wegovy (wegovy.com) includes a variety of information about the benefits of Wegovy relating to weight loss, as well as "Important Safety Information" – however, Defendants do not disclose the risk of

---

[53] Wegovy prescribing information, available at https://www.novo-pi.com/wegovy.pdf (last visited on 9/19/23).
[54] Wegovy prescribing information, available at https://www.novo-pi.com/wegovy.pdf (last visited on 9/19/23).

gastroparesis, within the "Important Safety Information" section or elsewhere on their promotional website.[55]

74.    None of Defendants' additional advertising or promotional materials warned prescription providers or the general public of the risks of gastroparesis and its sequalae.

75.    From the date Novo Nordisk received FDA approval to market Wegovy until the present time, Novo Nordisk made, distributed, marketed, and/or sold Wegovy without adequate warning to Plaintiff's prescribing physician(s) and/or Plaintiff that Wegovy was causally associated with and/or could cause gastroparesis and its sequelae.

76.    Defendants knew or should have known of the causal association between the use of GLP-1RAs and the risk of developing gastroparesis and its sequelae. Defendants' actual and constructive knowledge derived from their clinical studies, case reports, and the medical literature, including the medical literature and case reports referenced in this Complaint.

77.    Upon information and belief, Defendants ignored the causal association between the use of GLP-1RAs and the risk of developing gastroparesis and its sequelae.

78.    Novo Nordisk's failure to disclose information that they possessed regarding the causal association between the use of GLP-1RAs and the risk of developing gastroparesis and its sequelae, rendered the warnings for Wegovy inadequate.

79.    On information and belief, as a result of Novo Nordisk's inadequate warnings, the medical community at large, and Plaintiff's prescribing physician in particular, were not aware that Wegovy can cause gastroparesis, nor were they aware that "common adverse reactions" listed on the label might be sequelae of gastroparesis.

---

[55] *See* wegovy.com (last visited on 9/19/23).

80.     On information and belief, had Novo Nordisk adequately warned Plaintiff's prescribing physician that Wegovy is causally associated with gastroparesis and its sequelae, then the physician's prescribing decision would have changed by not prescribing Wegovy, or by monitoring Plaintiff's health for symptoms of gastroparesis and discontinuing Wegovy when the symptoms first started.

81.     By reason of the foregoing acts and omissions, Plaintiff was and still is caused to suffer from gastroparesis and its sequelae, which resulted in severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

## FIRST CAUSE OF ACTION
## (NEGLIGENT FAILURE TO WARN—
## AGAINST ALL DEFENDANTS)

82.     Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

83.     Texas law imposes a duty on companies who design, manufacture, test, advertise, promote, market, sell, and distribute prescription medications to adequately warn prescribing physicians of the extent, nature, and severity of the risks of harm posed by their products.

84.     At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Wegovy that was used by Plaintiff.

85.    Wegovy was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

86.    At all relevant times, after approval of Wegovy, and at the times Wegovy left the Defendants' control, Defendants knew or should have known that Wegovy was defective and unreasonably dangerous because the labeling for the prescription medication did not adequately warn of the risk of gastroparesis and its sequelae, especially when used in the form and manner as provided by Defendants.

87.    Despite the fact that Defendants knew or should have known that Wegovy caused unreasonably dangerous injuries, Defendants continued to market, distribute, and/or sell Wegovy to consumers, including Plaintiff, without adequate warnings.

88.    Despite the fact that Defendants knew or should have known that Wegovy caused unreasonably dangerous injuries, Defendants continued to market Wegovy to prescribing physicians, including Plaintiff's prescribing physician(s), without adequate warnings.

89.    Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of their failure to provide adequate warnings, as set forth herein.

90.    At all relevant times, given its increased safety risks, Wegovy was not fit for the ordinary purpose for which it was intended.

91.    At all relevant times, given its increased safety risks, Wegovy did not meet the reasonable expectations of an ordinary consumer, particularly Plaintiff.

92.    Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, sale, and/or

distribution of Wegovy into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous injuries, such as gastroparesis and its sequelae.

93.     At all relevant times, Plaintiff was using Wegovy for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus.

94.     The Wegovy designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that the product created a risk of serious and dangerous injuries, including gastroparesis and its sequelae, as well as other severe and personal injuries which are permanent and lasting in nature, and Defendants failed to adequately warn of said risk.

95.     The Wegovy designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, including gastroparesis and its sequalae, as well as other severe and permanent health consequences from Wegovy, they failed to provide adequate warnings to users and/or prescribers of the product, and continued to improperly advertise, market and/or promote their product, Wegovy.

96.     The label for Wegovy was inadequate because it did not warn and/or adequately warn of all possible adverse side effects causally associated with the use of Wegovy, including the increased risk of gastroparesis and its sequelae.

97.    The label for Wegovy was inadequate because it failed to warn Plaintiff's prescribing physician(s) that there was a causal association between Wegovy and gastroparesis and its sequelae, based on post-marketing safety data, safety signals, and medical and scientific literature.

98.    The label for Wegovy was inadequate because it did not warn and/or adequately warn that Wegovy had not been sufficiently and/or adequately tested for safety risks, including gastroparesis and its sequelae.

99.    The label for Wegovy was inadequate because it did not warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Wegovy.

100.    The label for Wegovy was inadequate because it did not warn and/or adequately warn of the severity and duration of adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects.

101.    Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) were inadequate because Defendants failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Wegovy, including the increased risk of gastroparesis and its sequelae.

102.    Communications made by Defendants to Plaintiff's prescribing physician(s) and Plaintiff were inadequate because Defendants did not warn Plaintiff's prescribing physicians of all conditions for which a causal association exists, including, but not limited to, gastroparesis and its sequelae.

103.    Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) were inadequate because Defendants failed to warn and/or adequately warn that

Wegovy had not been sufficiently and/or adequately tested for safety risks, including gastroparesis and its sequelae.

104.    Plaintiff had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and Plaintiff's reliance upon Defendants' warnings was reasonable.

105.    Plaintiff's prescribing physician(s) had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and his/her/their reliance upon Defendants' warnings was reasonable.

106.    Upon information and belief, had Plaintiff's prescribing physician(s) been warned of the increased risks of gastroparesis and its sequalae, which are causally associated with Wegovy, then the prescribing physician would not have prescribed Wegovy and/or would have provided Plaintiff with adequate warnings regarding the dangers of Wegovy so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Wegovy.

107.    Upon information and belief, had Plaintiff's prescribing physician(s) been warned that Wegovy had not been sufficiently and/or adequately tested for safety risks, including gastroparesis and its sequelae, the prescribing physician would not have prescribed Wegovy and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Wegovy so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Wegovy.

108.    If Plaintiff had been warned of the increased risks of gastroparesis and its sequelae, which are causally associated with Wegovy, then Plaintiff would not have used Wegovy and/or suffered from gastroparesis and its sequelae.

109. If Plaintiff had been warned that Wegovy had not been sufficiently and/or adequately tested for safety risks, including gastroparesis and its sequalae, then Plaintiff would not have used Wegovy and/or suffered gastroparesis and its sequelae.

110. If Plaintiff had been warned of the increased risks of gastroparesis and its sequelae, which is causally associated with Wegovy, then Plaintiff would have informed Plaintiff's prescribers that Plaintiff did not want to take Wegovy.

111. Upon information and belief, if Plaintiff had informed Plaintiff's prescribing physician(s) that Plaintiff did not want to take Wegovy due to the risks of gastroparesis and its sequelae, or the lack of adequate testing for safety risks, then Plaintiff's prescribing physician(s) would not have prescribed Wegovy and/or would have altered their prescribing practices and/or would have provided Plaintiff with adequate warnings regarding the dangers of Wegovy so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Wegovy.

112. By reason of the foregoing, Defendants have become liable to Plaintiff for the designing, marketing, promoting, distribution and/or selling of an unreasonably dangerous product, Wegovy.

113. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product which created an unreasonable risk to the health of consumers and to Plaintiff in particular, and Defendants are therefore liable for the injuries sustained by Plaintiff under Texas law.

114. Defendants' inadequate warnings for Wegovy were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

115.    The inadequate warnings in Defendants' drug, Wegovy, existed when Defendants marketed and sold the drug to Plaintiff's prescribing physician(s) and/or to Plaintiff and when the drug was prescribed to Plaintiff.

116.    The inadequate warnings for Defendants' drug, Wegovy, was a producing cause of, a proximate cause of, and/or a substantial factor in causing Plaintiff's injuries and damages.

117.    As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, including gastroparesis and its sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

118.    As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

119.    Plaintiff would show that Plaintiff did not discover, and could not have discovered through the exercise of reasonable diligence, the connection between Plaintiff's injuries and Defendants' medications until after March 2, 2023, when Plaintiff learned that Wegovy may cause gastroparesis and its sequelae.

120.    Pleading further and subject to the foregoing and without waiving same, Plaintiff would show that Defendants owed Plaintiff's prescribing physician(s) and/or Plaintiff a duty to adequately warn of the extent and the nature of the risks posed by their medications. Plaintiff would further show that because Defendants improperly withheld and/or concealed and/or hid

information regarding the extent and the nature of the risks posed by their medications from Plaintiff's prescribing physician(s) and/or Plaintiff, Plaintiff was unable to learn about the cause of Plaintiff's injuries until after March 2, 2023, when Plaintiff learned that Wegovy may cause gastroparesis and its sequelae. Accordingly, Defendants fraudulently concealed the existence of Plaintiff's claims.

**SECOND CAUSE OF ACTION**
**(STRICT PRODUCT LIABILITY FAILURE TO WARN –**
**AGAINST ALL DEFENDANTS)**

121. Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

122. Under Texas law, a company that sells a product in a defective condition unreasonably dangerous to the user or consumer is subject to liability for harm caused to the ultimate user or consumer.

123. Products can be unreasonably dangerous because of a defect in marketing, design, or manufacturing.

124. Texas law imposes a duty on companies who design, manufacture, test, advertise, promote, market, sell, and distribute prescription medications to adequately warn prescribing physicians of the extent, nature, and severity of the risks of harm posed by their product. At all times mentioned herein, the Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Wegovy that was prescribed to and used by the Plaintiff.

125.    Wegovy was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by the Defendants.

126.    At all relevant times, after approval of Wegovy, and at the times Wegovy left the Defendants' control, Defendants knew or should have known that Wegovy was defective and unreasonably dangerous because the labeling for the prescription medication did not adequately warn of the risk of gastroparesis and its sequelae, especially when used in the form and manner as provided by Defendants.

127.    Despite the fact that Defendants knew or should have known that Wegovy caused unreasonably dangerous injuries, including, but not limited to, gastroparesis and its sequelae, Defendants continued to market, distribute, and/or sell Wegovy to consumers, including Plaintiff, without adequate warnings.

128.    Despite the fact that Defendants knew or should have known that Wegovy caused unreasonably dangerous injuries, including, but not limited to, gastroparesis and its sequelae, Defendants continued to market Wegovy to prescribing physicians, including Plaintiff's prescribing physician(s), without adequate warnings.

129.    Defendants knew or should have known that consumers such as the Plaintiff would foreseeably suffer injury as a result of their failure to provide adequate warnings, as set forth herein.

130.    At all relevant times, given its increased safety risks, Wegovy was not fit for the ordinary purpose for which it was intended.

131.    At all relevant times, given its increased safety risks, Wegovy did not meet the reasonable expectations of an ordinary consumer, particularly the Plaintiff.

132.    Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, sale, and/or distribution of Wegovy into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous injuries, such as gastroparesis.

133.    At all relevant times, Plaintiff was using Wegovy for the purpose and in a manner normally intended.

134.    The Wegovy designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as the Defendants knew or should have known that the product created a risk of serious and dangerous injuries, including, but not limited to, gastroparesis and its sequelae, as well as other severe and personal injuries which are permanent and lasting in nature and the Defendants failed to adequately warn of said risk.

135.    The Wegovy designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, including gastroparesis, as well as other severe and permanent health consequences from Wegovy, they failed to provide adequate warnings to users and/or prescribers of the product, and continued to improperly advertise, market and/or promote the product.

136.    The label for Wegovy was inadequate because it did not warn and/or adequately warn of all possible adverse side effects causally associated with the use of Wegovy, including the increased risk of gastroparesis and its sequelae.

137.    The label for Wegovy was inadequate because it failed to warn Plaintiff's prescribing physician(s) that there was a causal association between Wegovy and gastroparesis

and its sequelae based on post-marketing safety data, safety signals, and medical and scientific literature.

138. The label for Wegovy was inadequate because it did not warn and/or adequately warn that Wegovy had not been sufficiently and/or adequately tested for safety risks, including gastroparesis and its sequelae.

139. The label for Wegovy was inadequate because it did not warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Wegovy.

140. The label for Wegovy was inadequate because it did not warn and/or adequately warn of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity of the side effects.

141. Communications made by Defendants to Plaintiff's prescribing physician(s) and Plaintiff were inadequate because Defendants failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Wegovy, including the increased risk of gastroparesis and its sequelae.

142. Communications made by Defendants to Plaintiff's prescribing physician(s) and Plaintiff were inadequate because Defendants did not warn Plaintiff's prescribing physicians of all conditions for which a causal association exists, including, but not limited to, gastroparesis and its sequelae.

143. Communications made by Defendants to Plaintiff's prescribing physician(s) and Plaintiff were inadequate because Defendants failed to warn and/or adequately warn that Wegovy had not been sufficiently and/or adequately tested for safety risks, including gastroparesis.

144. Plaintiff had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and Plaintiff's reliance upon Defendants' warnings was reasonable.

145.    Plaintiff's prescribing physician(s) had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and his/her/their reliance upon Defendants' warnings was reasonable.

146.    Upon information and belief, had Plaintiff's prescribing physician(s) been warned of the increased risk of gastroparesis causally associated with Wegovy, they would not have prescribed Wegovy and/or would have altered their prescribing practices and/or would have provided Plaintiff with adequate warnings regarding the dangers of Wegovy so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Wegovy.

147.    Upon information and belief, had Plaintiff's prescribing physician(s) been warned that Wegovy had not been sufficiently and/or adequately tested for safety risks, including gastroparesis, they would not have prescribed Wegovy and/or would have altered their prescribing practices and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Wegovy so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Wegovy.

148.    Had Plaintiff been warned of the increased risk of gastroparesis causally associated with Wegovy, Plaintiff would not have used Wegovy and and/or suffered from gastroparesis and its sequelae.

149.    Had Plaintiff been warned that Wegovy had not been sufficiently and/or adequately tested for safety risks, including gastroparesis, Plaintiff would not have used Wegovy and/or suffered gastroparesis and its sequelae.

150.    Had Plaintiff been warned of the increased risk of gastroparesis causally associated with Wegovy, Plaintiff would have informed Plaintiff's prescribers that Plaintiff did not want to take Wegovy.

151.    Upon information and belief, if Plaintiff had informed Plaintiff's prescribing physician(s) that Plaintiff did not want to take Wegovy due to the risk of gastroparesis, Plaintiff's prescribing physician(s) would not have prescribed Wegovy and/or would have altered their prescribing practices and/or would have provided Plaintiff with adequate warnings regarding the dangers of Wegovy so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Wegovy.

152.    By reason of the foregoing, Defendants have become liable to the Plaintiff for the designing, marketing, promoting, distribution and/or selling of unreasonably dangerous product, Wegovy.

153.    Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the defective product which created an unreasonable risk to the health of consumers and to the Plaintiff in particular, and Defendants are therefore liable for the injuries and damages sustained by the Plaintiff under Texas law.

154.    Defendants' inadequate warnings for Wegovy were acts that amount to willful, wanton, grossly negligent, and/or reckless conduct by Defendants.

155.    The inadequate warnings for Defendants' drug, Wegovy, existed when Defendants marketed and sold the drug to Plaintiff's prescribing physician(s) and/or to Plaintiff and when the drug was prescribed to Plaintiff.

156.    When Defendants marketed and sold Wegovy to Plaintiff's prescribing physician(s) and/or to Plaintiff, the product was unreasonably dangerous because it had defective warnings.

157.    The inadequate warnings in Defendants' drug, Wegovy, were a producing cause of, a proximate cause of, and/or a substantial factor in causing Plaintiff's injuries.

158.    As a result of the foregoing acts and omissions, the Plaintiff was caused to suffer serious and dangerous injuries including gastroparesis and its sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

159.    As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

160.    Plaintiff would show that Plaintiff did not discover, and could not have discovered through the exercise of reasonable diligence, the connection between Plaintiff's injuries and Defendants' medication until after March 2, 2023, when Plaintiff learned that Wegovy may cause gastroparesis and its sequelae.

161.    Pleading further and subject to the foregoing and without waiving same, Plaintiff would show that Defendants owed Plaintiff's prescribing physician(s) and/or Plaintiff a duty to adequately warn of the extent and the nature of the risks posed by their medication. Plaintiff would further show that because Defendants improperly withheld and/or concealed and/or hid information regarding the extent and the nature of the risks posed by their medication from Plaintiff's prescribing physician(s) and/or Plaintiff, Plaintiff was unable to learn about the cause of Plaintiff's injuries until after March 2, 2023, when Plaintiff learned that Wegovy may cause gastroparesis and its sequelae. Accordingly, Defendants fraudulently concealed the existence of Plaintiff's claims.

## THIRD CAUSE OF ACTION
## (BREACH OF EXPRESS WARRANTY –
## AGAINST ALL DEFENDANTS)

162.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

163.    At all relevant times, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, distributed, and/or have acquired the Defendants who designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Wegovy, which was used by Plaintiff as hereinabove described.

164.    At all relevant times, Defendants expressly warranted to Plaintiff and Plaintiff's prescribing physician(s) that Wegovy was safe as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus.

165.    The aforementioned express warranties were made to Plaintiff and Plaintiff's prescribing physician(s) by way of Wegovy's label, website, advertisements, promotional materials, and through other statements.

166.    As a result of Defendants' express warranties, express warranties to Plaintiff's prescribing physician(s) and to Plaintiff,  Plaintiff's prescribing physician was induced to, and did, prescribe Wegovy to Plaintiff, and Plaintiff was induced to, and did, use Wegovy.

167.    At all relevant times, Defendants reasonably anticipated and expected that individuals, such as Plaintiff, would use and/or consume Wegovy based upon their express warranties.

168.    At all relevant times, Defendants reasonably anticipated and expected that prescribing physicians, such as Plaintiff's prescribing physician(s), would recommend, prescribe and/or dispense Wegovy based upon their express warranties.

169.    At all relevant times, Defendants knew or should have known that Wegovy was unreasonably dangerous because of its increased risk of gastroparesis and its sequelae, especially when the drug was used in the form and manner as provided by Defendants.

170.    At all relevant times, Defendants knew or should have known that Wegovy had not been sufficiently and/or adequately tested for safety.

171.    The unreasonably dangerous characteristics of Wegovy were beyond that which would be contemplated by the ordinary user, such as Plaintiff, with the ordinary knowledge common to the public as to the drug's characteristics.

172.    The unreasonably dangerous characteristics of Wegovy were beyond that which would be contemplated by Plaintiff's prescribing physician(s), with the ordinary knowledge common to prescribing physician as to the drug's characteristics.

173.    At the time Wegovy left Defendants' control, Wegovy did not conform to Defendants' express warranties because Wegovy was not safe to use as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus, in that it was causally associated with increased risks of gastroparesis and its sequelae.

174.    The express warranties made by Defendants regarding the safety of Wegovy were made with the intent to induce Plaintiff to use the product and/or Plaintiff's prescribing physician(s) to prescribe the product.

175.    Defendants knew and/or should have known that by making the express warranties to Plaintiff and/or Plaintiff's prescribing physician(s), it would be the natural tendency of Plaintiff

to use Wegovy and/or the natural tendency of Plaintiff's prescribing physician(s) to prescribe Wegovy.

176.    Plaintiff and Plaintiff's prescribing physician(s), as well as members of the medical community, relied on the express warranties of Defendants identified herein.

177.    Had Defendants not made these express warranties, Plaintiff would not have used Wegovy and/or, upon information and belief, Plaintiff's prescribing physician(s) would not have prescribed Wegovy and/or would have altered their prescribing practices and/or would have provided Plaintiff with adequate warnings regarding the dangers of Wegovy so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Wegovy.

178.    Plaintiff's injuries and damages were directly caused by Defendants' breach of the aforementioned express warranties.

179.    Plaintiff's injuries and damages arose from a reasonably anticipated use of the product by Plaintiff.

180.    Accordingly, Defendants are liable as a result of their breach of express warranties to Plaintiff.

181.    As a result of the foregoing breaches, Plaintiff was caused to suffer serious and dangerous injuries including gastroparesis and its sequelae, as well as other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

182.    By reason of the foregoing, Plaintiff has been severely and permanently injured and will require more constant and continuous medical monitoring and treatment than prior to Plaintiff's use of Defendants' Wegovy drug.

183.    As a result of the foregoing acts and omissions, Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

184.    Plaintiff would show that Plaintiff did not discover, and could not have discovered through the exercise of reasonable diligence, the connection between Plaintiff's injuries and Defendants' medication until after March 2, 2023, when Plaintiff learned that Wegovy may cause gastroparesis and its sequelae.

185.    Pleading further and subject to the foregoing and without waiving same, Plaintiff would show that Defendants owed Plaintiff's prescribing physician(s) and/or Plaintiff a duty to adequately warn of the extent and the nature of the risks posed by their medications. Plaintiff would further show that because Defendants improperly withheld and/or concealed and/or hid information regarding the extent and the nature of the risks posed by their medication from Plaintiff's prescribing physician(s) and/or Plaintiff, Plaintiff was unable to learn about the cause of Plaintiff's injuries until after March 2, 2023, when Plaintiff learned that Wegovy may cause gastroparesis and its sequelae. Accordingly, Defendants fraudulently concealed the existence of Plaintiff's claims.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants on each of the above-referenced claims and Causes of Action and as follows:

1.      Awarding compensatory damages to Plaintiff for past and future damages, including but not limited to pain and suffering for severe and permanent personal injuries sustained by Plaintiff, health care costs, medical monitoring, together with interest and costs as provided by law;

2.      Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of Defendants, who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to Plaintiff in an amount sufficient to punish Defendants and deter future similar conduct;

3.      Awarding Plaintiff the costs of these proceedings; and

4.      Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury as to all issues.

Dated: March 3, 2025                     RESPECTFULLY SUBMITTED,

                                    */s/ Jonathan M. Sedgh*
                                    Jonathan M. Sedgh
                                    Morgan & Morgan
                                    199 Water Street, Suite 1500
                                    New York, NY 10038
                                    Phone: (212) 738-6839
                                    *jsedgh@forthepeople.com*

                                    Nicole Lovett
                                    Morgan & Morgan
                                    201 N Franklin St, 7th Floor
                                    Tampa, FL 33602
                                    Phone: (813) 275-5263
                                    Fax: (813) 222-2455
                                    *nlovett@forthepeople.com*

                                    *Attorneys for Plaintiff*